IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CHARLES A. GOREE,              :
                               :
    Plaintiff,                 :
                               :
vs.                            :
                               :    CIVIL ACTION 13-0450-M
CAROLYN W. COLVIN,             :
Social Security Commissioner,  :
                               :
    Defendant.                 :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 15). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (Doc. 23). Oral argument was waived in this action (Doc. 22). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the most recent administrative hearing, Plaintiff was forty-seven years old, had completed a high school education (Tr. 39), and had previous work experience as a hand packer, poultry worker, and tractor driver (Tr. 46). In claiming benefits, Goree alleges disability due to degenerative disk disease of the lumbar, cervical, and thoracic spine, a pain disorder, and mild mental retardation (Doc. 15 Fact Sheet).

The Plaintiff filed protective applications for disability benefits and SSI on November 17, 2009 (Tr. 232-36; *see also* Tr. 20). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although Goree could not return to his past relevant work, there were specific light jobs that he could perform (Tr. 20-29). Plaintiff requested review of the hearing decision (Tr. 14) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Goree alleges that: (1) He meets the requirements of Listing 12.05C; and (2) the ALJ improperly discounted his testimony (Doc. 15). Defendant has responded to—and denies—these claims (Doc. 18). The relevant evidence of record follows.

On February 12, 2008, Goree underwent an MRI of the cervical spine that showed "a small central disc protrusion at T1-2 which produce[d] mild anterior extradural impression and appear[ed] to produce no neural impingement" (Tr. 341). On visits to the Marion Health Center, Plaintiff complained of back and neck pain, radiating into his arm; he reported that Amitriptyline[1] helped the pain (Tr. 337-40).

Records from the Vaughn Regional Medical Center show that, on August 21, 2008, Goree was admitted via the emergency room after being struck in the head with a crowbar (Tr. 319-28). There was no underlying skull fracture or evidence of intracranial hemorrhage or focal intracranial mass (Tr. 327). A week later, Plaintiff returned to have a staple removed; he also had complaints of continuing headaches and dizziness, though they were relieved with his medications (Tr. 330). Goree was discharged to his own custody, ambulatory, and in no pain (Tr.

---

[1] **Error! Main Document Only.***Amitriptyline*, marketed as *Elavil*, is used to treat the symptoms of depression. *Physician's Desk Reference* 3163 (52nd ed. 1998).

3

331).

On February 8, 2010, Goree was examined at the Selma Family Medical Center for a consultative examination with complaints of headaches (Tr. 351-55). Plaintiff was noted to be in no acute distress; motor strength was symmetrical with no obvious weaknesses. Superficial sensation was intact bilaterally to light touch and pain; he was dexterous without ataxia or tremor. Deep tendon reflexes were full and symmetric bilaterally while gait was coordinated and smooth. The examiner noted full strength in the shoulders, elbows, wrists, hands, and fingers bilaterally. The cervical spine showed tenderness though there was no instability or weakness; the thoracic spine was normal. The thoracolumbar spine demonstrated decreased range of motion (hereinafter *ROM*), though there was no pain or instability noted; the lumbosacral spine also demonstrated decreased ROM and elicited mild pain (Tr. 353).

On March 1, 2010, Psychologist Richard S. Reynolds examined Goree who reported completing a twelfth grade education in regular classes though he had to repeat the twelfth grade (Tr. 365-66). The Psychologist noted that he was oriented in four spheres, that thought content was logical, and that associations were tight. Recent memory was intact while remote memory was fair; judgment, insight, and decision-making abilities appeared intact. It was Reynolds's opinion that Goree's "ability to

4

understand, carryout, to remember instructions, and to respond appropriately to supervision, co-workers, work pressures in a work setting appear[ed] intact" (Tr. 366).

On June 21, 2010, Goree complained of pain in his shoulders, back, and both arms for the prior month at the Marion Health Center; there is no indication that any treatment was given (Tr. 383). On June 30, 2010, Dr. Jamil Aktar completed a clinical assessment of pain in which he indicated that Goree suffered from pain to an extent that it distracted him from adequately performing his daily activities; physical exercise would increase his pain to a degree that it would distract him from his tasks or cause him to abandon them completely (Tr. 394). Aktar also indicated that medication side effects would cause some limitations for Plaintiff but would not create serious problems. The Doctor also completed a physical capacities evaluation in which he indicated that Plaintiff was capable of lifting and carrying five pounds occasionally and one pound frequently; during an eight-hour work day, Goree could sit and stand or walk for one hour each (Tr. 395). He would be able to use his fingers for fine manipulation occasionally and gross manipulation rarely; Goree would never be able to use his arms or legs for pushing and pulling movements and could never climb, balance, bend, stoop, or reach.

On May 5, 2011, Psychologist Nina E. Tocci conducted an

examination in which Goree denied that he had received any mental health treatment; he stated that he had graduated from high school in a regular curriculum (Tr. 396-98). His affect was appropriate, normal, and stable; he was oriented in four spheres. Plaintiff "demonstrated a fair fund of information and comprehension;" he "demonstrated thought content appropriate to mood and circumstances and a logical thought organization" (Tr. 397). The Psychologist found that Goree demonstrated little insight into his behavior; he appeared to be functioning within the average range of intellectual ability. Indicating that he had a fair prognosis, Tocci stated the following:

> Without objective information (e.g. WAIS; WMS; MMPI) it is difficult to determine his level of impairment (if any) and level of sincerity of symptoms (i.e. malingering). He appears to have the cognitive ability to learn, perform, and complete moderate tasks in a timely manner.

(Tr. 398). On June 2, 2011, Psychologist Tocci completed a Mental Medical Source Statement in which she indicated that Goree's impairments did not affect his ability to understand, remember, and carry out instructions (Tr. 400-02). She further indicated that Plaintiff's ability to interact appropriately with the public, supervisors, and co-workers and respond appropriately to usual work situations and to changes in a routine work setting would not be affected by his impairments.

6

On August 16, 2011, Psychologist Reynolds again examined Goree who denied "ever seeking psychiatric or psychological treatment of symptoms of mental illness" as he "didn't think [he] needed it" (Tr. 405; *see generally* Tr. 405-08). Plaintiff was in a euthymic mood but in no distress; the Psychologist noted that there was "no evident treatment history to substantiate symptoms of mental illness" (Tr. 406). Goree stated that he had graduated from high school, including some special education classes. On examination, Reynolds found Plaintiff oriented in four spheres with logical thought content and tight associations. Recent memory was intact while remote memory was judged to be fair; insight was shallow and concrete while judgment appeared to be intact. Goree took the WAIS-IV and scored a Full Scale IQ of 63; this was noted to be in the mild range of mental retardation. The Psychologist thought that these results were a valid estimate of his current intellectual functioning. Reynolds went on to note the following, however:

> During this interview, Mr. Goree does not present significant symptoms or history of symptoms regarding mental illness. He does reports [sic] feeling poorly and occasionally sadness and crying episodes during this interview. Reports are not consistent with presentation. In my opinion, symptoms presented are not sufficient for diagnosis of mental illness. In my opinion, Mr. Goree does not demonstrate deficits in ability to understand, carryout, remember instructions

7

> simple instructions, or make judgments on
> simple work related decisions. He
> demonstrates no deficits in ability to
> understand complex instructions, carryout
> complex instructions or make judgments on
> complex work related decisions. I do not
> see data supporting deficits in ability to
> respond appropriately to the public,
> supervisors, co workers, or usual work
> situation and changes in a routine in a work
> setting. Mr. Goree would be able to manage
> awarded funds appropriately.

(Tr. 408). Psychologist Reynolds also completed a Mental Medical Source Statement in which he indicated that Goree had no limitations in his ability to work (Tr. 409-11).

A report from the Marion Health Center on August 25, 2011 noted that Plaintiff complained of back pain for the prior week; Tylenol #3[2] was prescribed (Tr. 414).

At the most recent evidentiary hearing, Goree testified that he had quit work in 2007 because pain in his neck and back had gotten bad; since then, lower back pain was so bad that he could hardly move (Tr. 39-45). The pain radiated into both arms, but was worse on the left; movement made it worse. Plaintiff rated his pain as nine on a ten-point scale; sometimes, the pain was only a six. He had to lie down practically all day long because of it. Goree testified that he took special education classes in math and English and had to

---

[2]**Error! Main Document Only.** *Tylenol* with codeine is used "for the relief of mild to moderately severe pain." *Physician's Desk Reference* 2061-62 (52nd ed. 1998).

8

repeat the twelfth grade to get his certificate.

This concludes the Court's review of the medical evidence.

In bringing this action, Plaintiff first claims that he meets the requirements of Listing 12.05C (Doc. 15, pp. 4-8). The Court notes that the introductory notes to Section 12.05 state that "[m]ental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2013). Subsection C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (2013).

The Court notes that although the regulations require that Plaintiff demonstrate he suffered "deficits in adaptive behavior" before he turned twenty-two, 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2013), the Eleventh Circuit Court of Appeals, in *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001), has held "that there is a presumption that mental retardation is a condition that remains constant throughout life." The *Hodges* Court further held "that a claimant need not present evidence that she manifested deficits

in adaptive functioning prior to the age of twenty-two, when she presented evidence of low IQ test results after the age of twenty-two."  *Hodges*, 276 F.3d at 1266.

In his determination, the ALJ found that Goree had no severe mental impairments (Tr. 22).  The ALJ faithfully reported Psychologist Reynolds' examination notes, but found his conclusion that Plaintiff suffered from mental retardation to be unsupported by his own findings (Tr. 26-27).  The ALJ specifically noted that the Psychologist's findings of no limitations in the work place contradicted his diagnosis of mental retardation (Tr. 27).  The Court notes that Reynolds, in his summary of the examination, specifically stated the following:  "In my opinion, symptoms presented are not sufficient for diagnosis of mental illness" (Tr. 408).  This conclusory statement is consistent with Psychologist Tocci's finding that Goree was "functioning within the average range of intellectual ability" (Tr. 397).  The Court would further note that although Plaintiff has achieved test results indicating some mental retardation, his years of successful working belie his claim that a mental impairment impedes him now in that endeavor.  This claim is of no merit.

Goree has also claims that the ALJ improperly discounted his testimony; the focus of the claim is that the ALJ provided no analysis in finding Plaintiff's testimony non-credible (Doc.

10

15, pp. 8-11). The standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence

>                   (including statements about the intensity
>                   and persistence of your pain or other
>                   symptoms which may reasonably be accepted as
>                   consistent with the medical signs and
>                   laboratory findings), would lead to a
>                   conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2013).

In his determination, the ALJ found that Goree's impairments could cause the symptoms alleged, but not at the intensity alleged (Tr. 25). The ALJ went on to discredit the physical capacities evaluation completed by Dr. Aktar as unsupported by the objective evidence found in either his own notes or the record as a whole (Tr. 26); Plaintiff has not challenged this finding. The Court would also note that Plaintiff's testimony regarding his education was inconsistent with reports to his various doctors. Furthermore, his lack of treatment does not support his asserted claim of debilitating impairments. While the ALJ's rejection of Goree's testimony was not the model of efficiency, the conclusion is no less supported by the substantial evidence of record.

Plaintiff has raised two different claims in bringing this action. Both are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is recommended that the Secretary's decision be **AFFIRMED**, *see*

*Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 10th day of April, 2014.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE